**GULF CASUALTY CO. v. ARCHER.**

No. 3683.

Court of Civil Appeals of Texas.   El Paso.

June 23, 1938.

Rehearing Denied July 7, 1938.

Peveril O. Settle, W. E. Allen, and David W. Stephens, all of Fort Worth, Henry Russell, of Pecos, and John E. Green, Jr., of Houston, for appellant.

J. B. Cotten and John J. Watts, both of Crane, and W. C. Jackson, of Fort Stockton, for appellee.

WALTHALL, Justice.

This appeal is prosecuted from a judgment in the District Court of Pecos County, Texas, in which appellee was awarded a recovery against appellant of $5,592.22 under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq.

Appellee filed two suits in the way of separate appeals from two proceedings instituted by him before the Industrial Accident Board. The two suits were consolidated by the trial court and amended pleadings were filed in the cause as consolidated.

In his amended petition appellee alleged, as his first ground of complaint, that on or about June 1, 1936, while employed by Gulf Oil Corporation as a pumper in the Yates field, he received an accidental injury by breathing poisonous gas and gas fumes resulting in active tuberculosis in both lungs, kidney infection and a heart ailment; that by reason thereof he was rendered totally and permanently incapacitated as a workman within the contemplation of the Workmen's Compensation Act.

As the second ground of complaint appellee alleged that on or about July 7, 1936, while likewise employed and working as a pumper for Gulf Oil Corporation in the Yates field, he fell through a ladder a distance of about four feet which resulted in personal injuries to his back, sides, hips, including a fracture with lateral displacements of the lumbar vertebra and a marked subluxation of the right sacroiliac joint, etc.; that at the said time he, appellee, was afflicted with chronic arthritis in his lumbar vertebra which was aggravated by the fall; that by reason of said injuries he is totally and permanently incapacitated for work, and is entitled to full compensation in a lump sum, provided for in the Workmen's Compensation Law.

The Industrial Accident Board refused appellee compensation for the injuries alleged to have been sustained on June 1, 1936, but awarded him compensation for injuries alleged to have been sustained on July 7, 1936, on the basis of fifty per cent incapacity for a period of fifty-two weeks.

At the request of appellee's counsel the jury did not answer the questions submitted to them for alleged incapacity caused by inhaling gas on June 1, 1936, but found in answer to other questions that injuries were sustained by appellee in his fall from the ladder on July 7, 1936, which resulted in total and permanent incapacity. On the jury's verdict the court rendered judgment for appellee in a lump sum of $5,599.22, apportioning same two-thirds to appellee and one-third to his attorneys.

The court overruled appellant's motion for a new trial, and appellant appeals.

## Opinion

As noted in the above statement appellee filed two separate suits in the District Court of Pecos County in his appeal from the proceedings of the Industrial Accident Board. In one suit, referred to as the first, appellee claims an accidental injury on June 1, 1936, by breathing poisonous gas and gas fumes resulting in active tuberculosis, kidney infection and heart ailment, by reason of which injury appellee claimed total and permanent incapacity. In the second suit appellee claimed total and permanent incapacity on account of a fall through a ladder on July 7, 1936, in, which he alleges injury to his back, sides, hips, fracture with lateral displacements of the lumbar vertebra and a subluxation of the right sacroiliac joint, etc. In his amended petition filed after the order of consolidation of the two suits, appellee pleaded, in separate counts, the two causes of action substantially as in the two suits. In the instruction to the jury the court submitted the facts pertaining to the two causes of action and asked for findings on the facts as submitted. The court heard evidence on both causes as pleaded by both parties, and submitted the issues of fact to the jury. The first eleven issues submitted had reference to appellee's first cause of action, that is, to the alleged injury caused by breathing poisonous gas and gas fumes on June 1, 1936 and causing tuberculosis. In appellee's opening argument to the jury one of appellee's counsel stated to the jury that they "need not answer the first eleven special issues submitted to them," and the jury made no findings on such issues, but made findings on all issues submitted having reference to the second alleged cause of action as happening on July 7, 1936, in falling from the ladder.

The evidence tended to show that for some years prior to the first day of June, 1936, appellee was affected by a bronchial condition and arthritis, and one of appellant's defenses was that whatever permanent incapacity appellee may have was the direct result of or attributable to appellee's bronchial condition, and particularly arthritis, and was not the result of any injury received in the course of his employment.

Appellant submitted and requested the court to give the following charge: "Do you find from a preponderance of the evidence that plaintiff (appellee) suffered any total incapacity as a sole result of arthritis?" and if the jury answered in the affirmative, then to find when such total incapacity began and whether such total incapacity was permanent, and a further request to the court that if such special issue was insufficient to present its defense, then that the proper issue be prepared and submitted presenting such defense. The court refused to submit the charge, and so far as the record shows did not submit a charge in lieu thereof, but in the court's main charge the court submitted special issue No. 26, as follows:

"Do you find and believe from a preponderance of the evidence that plaintiff's incapacity to work, if any, is not the sole result of a disease, disconnected with any accidental personal injury as that term has been defined to you? You will answer 'It is not the sole result of a disease or diseases' or 'It is the sole result of a disease or diseases,' as you find the facts to be."

The jury answered: "It is not the sole result of a disease or diseases."

Appellant, as stated in its propositions, objected to issue 26 as submitted, because "same is confusing, unduly limits the defense, leaves it to the jury to speculate on what is meant by the term 'disconnected with any accidental personal injury,' is not confined to any specific accident, and does not clearly place the burden of proof where such burden rests under the law."

The above objection as to the burden of proof we do not find in the objection made by appellant to the general charge, nor is a request for the burden of proof found in the above requested special issue.

Appellant complains that where the personal injury sustained by appellee resulted only in temporary incapacity, and that any permanent incapacity was caused solely by a pre-existing disease, it is appellant's right to have the effect of such diseased condition directly and affirmatively submitted to the jury so that the jury must find what part of the disability, if any, resulted solely from disease and what part resulted from the personal injury.

Appellant insists that special issue 26, copied above and objected to as stated, does not sufficiently submit to the jury the issues contended for; that special issue 26 is confusing, unduly limits its defense; that whatever permanent incapacity appellee may have is the direct result of disease, arthritis, and is not the result of any injury received in the course of his employment; that the

issue as submitted leaves it to the jury to speculate on what is meant in the charge by the term "disconnected personal injury," and is not confined to any special accident.

To cure any supposed defect in the charge complained of appellant, apparently, submitted the special charge copied above, asking the jury to find whether appellee suffered any total incapacity "as a sole result of arthritis," and to find when such total incapacity began, and whether it was permanent. The court refused to give the tendered special charge.

The record shows that the injury to appellee, alleged to have been sustained on June 1, 1936, by inhaling gas fumes was submitted to the jury in the first eleven issues, and that the injury of July 7, 1936 was the injury referred to in charge 26, the fall from the ladder, and the disease there referred to was arthritis, so that it seems to us that the "disease," "disconnected with any accidental personal injury," would mean arthritis and the accidental injury would be the injury occasioned by falling from the ladder.

■ It was the right of the appellant to have the question as to whether appellee was suffering from arthritis, and whether his injuries, if any, resulted solely therefrom, directly and affirmatively submitted to the jury, if the pleadings and the evidence raised such issue. Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S. W.2d 72; Armour & Co. v. Tomlin, Tex. Com.App., 60 S.W.2d 204. As said by Judge Critz in the first case above cited, a general denial filed by appellant was a sufficient pleading to raise the issue. The evidence clearly tends to show that for some years prior to and at the time of appellee's fall from the ladder on July 7, 1936, appellee was suffering with arthritis.

■ In the above cited cases, and others we have reviewed, it is held that liability for damages for personal injury cannot be avoided by merely showing that the person injured was not a well person at the time of the injury, notwithstanding the injury is aggravated or enhanced by the effect of disease existing at the time or afterwards occurring.

The evidence also tends to show that appellee did fall through or from the ladder at the time alleged and was injured as alleged thereby as found by the jury, and that his incapacity to work is not the sole result of any disease or diseases of which the evidence shows he was suffering at that time.

■ We think charge 26 complained of sufficiently submits the issue to the jury.

■ At the suggestion of appellee's attorney in his opening argument the jury made no findings on the first eleven issues in which were submitted appellee's first cause of action, injury caused by breathing poisonous gas, thus producing active tuberculosis, kidney infection and heart ailment.

Appellant contends here that the verdict of the jury as to total and permanent incapacity resulting from the fall from the ladder is unsupported by the evidence, in that the witness who testified to total and permanent incapacity resulting from the second injury attributed the physical condition of appellee to the results of the two separate alleged accidents. Appellant, in its brief, in this connection suggests that it was the duty of the jury to answer the questions submitted as to the alleged injury of June first, and that by having no findings on such issues, appellee received the benefit of the testimony as to the accident of June first, otherwise inadmissible and harmful, without any finding as to such accident or that it resulted in injury to appellee, and that because of such results to appellant the court should set the verdict and judgment aside. We do not concur with counsel in the suggestion. Appellee had before the court two causes of action, from each of which he claimed a total and permanent incapacity resulted. He had the right, we think, to dismiss as to either cause after the evidence was heard, without a jury finding on the issues submitted. If error, appellant made no objection. If the evidence offered as to the dismissed cause was thought to be inadmissible or harmful in considering the second cause without a finding on the issues to which it was offered, appellant made no motion to exclude it, nor to have the jury not to consider it in the jury's deliberation on the second cause of action then remaining. We are not prepared to say, however, that the evidence offered to the effect that appellee's breathing poisonous gas fumes and causing appellee to have active tuberculosis in both lungs was inadmissible and harmful, but, instead, we think that the evidence as to the ill condition of appellee by reason of his having breathed the gas was only an additional illness which could have been shown under either cause, and such result to ap-

pellee being one of appellant's most vital defenses. It seems to us that the only result of having the jury to make no findings on the first cause of action was to have the court to make such findings as the evidence would authorize, and the court is supposed to have done so, if requested.

■■ Appellant's propositions 7, 8, 9 and 10, referring to the remarks of appellee's counsel in his closing argument to the jury as inflammatory, improper and prejudicial, must be sustained. The question, "Isn't it your common knowledge from experience that the good old Gulf would have done the very thing that every other corporation would have done, and that would be to can him?" is an appeal to the jury to go outside of the record and to determine from their own knowledge of the policies of the Gulf Company and other corporations that the plaintiff was justified through fear in refraining from reporting his injuries. It is not an argument from evidence, but an argument to decide without evidence from "common knowledge." It is likewise an expression of opinion by counsel and based on alleged knowledge outside the record, practically making counsel a witness. Again, counsel said to the jury, "Do in this case as you would do if you were the plaintiff or the defendant. I think that is a good rule." In Metropolitan Life Ins. Co. v. Moss, Tex. Civ.App., 109 S.W.2d 1035, at page 1038, the Court condemned an appeal to the jury "to do for them [the widow and orphan children of decedent] what you would have done for you in this case." The Court said that it was an attempt to and calculated to persuade the jury to forego their sworn duty and not to reach a verdict from the preponderance of the evidence, but from the viewpoint of a litigant or interested party. In Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, the Commission of Appeals, speaking through Judge Taylor, in reversing the Court of Civil Appeals upon another ground, impliedly condemned asking the jury (page 957) "How would you feel about it if it was your wife?" It distinguished that argument from the one in Rio Grande, E. P. & S. F. Railway Co. v. Dupree, 55 S.W.2d 522, by saying that in the Dupree Case the argument carried no direct appeal to the jurors to put themselves in the place of the litigant in considering the injury. ·See, also, Traders & General Ins. Co. v. Ross, Tex.Com.App., 117 S.W.2d 423.

It is true counsel includes both parties in his language, but the context indicates clearly that he had in mind only the plaintiff, and such would be the meaning conveyed to the jury.

■ The court, over objection, permitted Dr. B. T. Brown to answer the following questions:

"Q. From your physical examination and your objective examination of Walter Edgar Archer (appellee) and from reading and interpreting the X-rays, have you formed an opinion, at this time, as to whether or not he is able to perform manual labor? A. I have.

"Q. What is that opinion? Now, Doctor, explain to the jury all of the—have you explained to the jury all of the injuries you saw in the X-ray pictures? A. I did.

"Q. And you think all of the injuries you saw in those pictures could have been caused by the history I have given you hypothetically? A. As far as the injury is concerned, yes.

"Q. Have you formed any opinion as to whether or not this man will ever be able to perform manual labor at any time in the future? A. I don't think this man will ever be able to do hard manual labor.

"Q. Would those injuries you have testified about in those X-rays be sufficient to disable this man from performing manual labor at this time, taking into consideration the physical examination? A. I know that this man is not able to do manual labor. He has a condition there in his back which will greatly handicap him and he would also be handicapped by the diseased condition of his heart and lungs, and I don't think he could do any manual labor.

"Q. Have you formed any opinion as to whether or not this man will ever be able to perform manual labor at any time in the future? A. I don't think this man will ever be able to do hard manual labor."

Dr. M. E. Barrett testified, in answer to questions, that from his physical examination of appellee that he is unable to work at the present time, and that he will never be able to do hard manual labor again.

The above is taken from appellant's brief.

Other evidence from the statement of facts shows that Dr. Brown testified from X-ray pictures and explained to the jury all the injuries he found in the pictures, and stated to be pulmonary tuberculosis, enlargement of the heart, an amount of ar-

thritis with some excess bone, and a compression fracture of the body of the fifth lumbar vertebra. He testified that he stripped appellee except as to his shoes; took his temperature and blood pressure and examined him from his head to his knees, examined, thumped and listened to his chest and got the note there, measured his chest to see how much expansion he had and stated it. The doctor then had X-rays made, and, as stated in the above, explained to the jury all the injuries the X-rays disclosed. In addition to the above statement of Dr. Barrett, of the Fort Stockton Hospital, the doctor testified: He found on X-ray examination that the body of the fifth lumbar vertebra was pressing against the sacrum and that a pad of cartilage with fluid should be between those parts, but was entirely absent; he saw a faint dark line going through there which he regarded as a compression of the fifth lumbar vertebra causing the jamming down of the back portion of that body, and that the compression feature of the fifth lumbar vertebra was caused by trauma.

We necessarily omit much of the evidence. We have concluded from the evidence stated and from the evidence examined and not here stated, that the facts stated by the witnesses, both from physical examination of appellee and from the X-ray pictures, were sufficiently presented to the jury. Southern Underwriters v. Knight, Tex.Civ.App., 107 S.W.2d 1097; Fidelity & Casualty Co. v. Van Arsdale, Tex.Civ.App., 108 S.W.2d 550.

Upon direct examination of each Drs. Black and Brown, appellee's counsel was permitted, over objection, to propound a hypothetical question, copied at length in appellant's brief but which we omit, and upon the facts stated in the question asked the witness: "Assuming all of those facts to be true and correct, then, in your opinion, do you think the injuries you have testified about finding in the X-ray could have been probably caused by those facts and circumstances?" The objection made was that the question did not establish or fix the condition of appellee prior to the injury, but left that to be speculated upon by the doctor. One witness answered: "I think it would be sufficient evidence to believe that they caused it." The other witness answered: "It could have been, yes, sir." Appellant contends under its proposition that in propounding a hypothetical question to an expert, a party is not entitled to omit material facts which are undisputed, and which have been proved by the testimony of such party's own witnesses, such as appellee's affliction with arthritis in his back at the time of his fall from the ladder, and especially must that be true since it was a most material fact to be considered in determining what was responsible for the condition of appellee's back, and whether appellee's fall from the ladder was the cause of such condition.

The general rule seems to prevail here and in other states that the hypothetical question must embrace and must be based upon all or enough of the admitted material facts relating to the subject on which the opinion is sought.

We have concluded that the admission of the answers of the witnesses to the hypothetical questions does not present reversible error. It seems to us that the evidence, though elicited under hypothetical questions and to medical experts, does not come strictly within the rules relating to expert testimony. The witnesses had elsewhere, as shown in the statement of facts, testified substantially to many of the facts embraced in the hypothetical question; the witnesses had examined the X-ray pictures, and Dr. Black had made an extensive personal examination of the physical condition of appellee, and had stated to the jury what he found. In Shuffield v. Taylor, 125 Tex. 601, 83 S.W.2d 955, 960, Judge Ryan, Commissioner, said that, "A question is not necessarily improper because it includes only a part of the facts in evidence, provided it embraces enough of them to enable the witness to formulate an intelligent opinion," and again said, "The question need not embrace all the facts under the conflicting theories of the case; each party may embody in his questions those facts which the evidence may tend to support." We refer to the above Taylor Case for other holdings and references applicable to the point submitted.

For reasons stated in the matter of the argument of counsel the case is reversed and remanded.