**BROOKS v. ENRIQUEZ et al.**

No. 11267.

Court of Civil Appeals of Texas. San Antonio.

June 2, 1943.

Rehearing Denied June 30, 1943.

W. O. Slattery, of Corpus Christi, and B. D. Kimbrough, of McAllen, for appellant.

E. H. Hernandez and Charles G. Lyman, both of Corpus Christi, for appellees.

MURRAY, Justice.

This suit was instituted by Annie Enriquez, joined by her father, Felix Enriquez, suing in his own behalf and as next friend of his minor daughter, against Sylvester Brooks, doing business as Brooks Taxi Company, seeking to recover damages alleged to have been sustained by both the minor and her father as a result of an accident on January 18, 1940, within the corporate limits of the City of Corpus Christi. It is alleged that while Annie Enriquez was crossing Sam Rankin Street in said city she was struck by a taxicab belonging to Brooks and thereby sustained physical injuries which resulted in damages to her personally and to her father by virtue of his loss of her earnings.

The trial was to a jury and judgment was rendered upon the jury's answers to the special issues submitted in favor of Felix Enriquez, individually and as next friend of Annie Enriquez, in the principal sum of $1,154, from which judgment Sylvester Brooks has prosecuted his appeal.

Appellant first contends that the trial court erred in not holding that Annie Enriquez was guilty of contributory negligence as a matter of law, in that the evidence conclusively shows that Annie was crossing Sam Rankin Street at a point not within a marked or unmarked cross-walk, and that she failed to yield the right-of-way to the taxicab, in violation of a city ordinance of said city.

We overrule this contention. The evidence does not conclusively show that Annie was crossing Sam Rankin Street at a point not within a marked or unmarked cross-walk, and even if she were crossing at a point not in a cross-walk and failed to yield the right-of-way to the taxicab, she would not be guilty of contributory negligence as a matter of law. The jury found, in answer to special issue No. 27, that Annie Enriquez at the time of the accident was not crossing the street at a place other than within a marked or unmarked cross-walk and at a distance north of the regular cross-walk of the intersection. This finding is supported by sufficient evidence. Annie Enriquez testified that on the night of the accident she had left Joseph's Economy Store, where she worked, and had started home traveling along Leopard Street in a westerly direction. It was about eight o'clock at night on January 18, 1940. The weather was freezing cold. Sleet and rain were falling. Sam Rankin Street crosses Leopard Street. It runs north and south, while Leopard runs east and west. When she arrived at the intersection of these two streets she stopped and looked to her left, which would be south on Sam Rankin Street. She saw a car approaching from the south on Sam Rankin Street which had not yet reached the intersection. She looked at the light and saw that she had a go sign and then started on across Sam Rankin Street when she was struck by the taxicab. She thought that the car she saw south of the intersection on Sam Rankin Street was the car that hit her, but she was probably mistaken about this, as it appears that the taxicab came down Leopard Street traveling west, that is, in the same direction Annie was going and made a right hand turn at Sam Rankin Street. With reference to whether or not she started across Sam Rankin Street on a cross-walk the following appears in her testimony:

"Q. What did you do after you looked at the light and saw the taxicab coming? A. I crossed the street.

"Q. You were going what direction? A. West.

"Q. Crossing Sam Rankin Street? A. Crossing Sam Rankin Street.

"Q. Were you crossing at the intersection where the sidewalk crossing is? A. No, a little bit, about two or three steps you know.

"Q. To the right. A. To the right.

"Q. On the regular sidewalk crossing? A. Yes, sir."

She further testified that she had arrived in the middle of the street when the taxicab hit her on the left side.

On cross-examination she was asked:

"Q. Were you as far as half way down the street where you were attempting to cross? A. Yes.

"Q. Now, what I mean there—I want to be fair on this thing—were you as far

down as half way in the block where you crossed? A. About half a block."

Andrew Lewis was the driver of the taxicab and testified that the collision occurred in the middle of the block about half-way between Leopard and Antelope Streets. Jesse Smith was a passenger in the taxicab and testified that the collision occurred about fifty or seventy-five feet from the corner.

Appellant bases his contention that the evidence conclusively establishes the fact that the collision did not occur in a cross-walk because Annie judicially admitted it was in the middle of the block. Annie was a Mexican girl eighteen years of age, had only a fifth-grade education, and did not appear to be any too well acquainted with the English language. She had been testifying that she was struck in the middle of the street and not close to the sidewalk and the jury may have concluded she meant the middle of the street when she said the middle of the block. The conflict in her testimony and the conflict between her testimony and that of the driver of the taxicab and the passenger were matters for the jury to weigh and consider. We cannot say that the jury finding to the effect that she was struck while crossing Sam Rankin Street at a cross-walk is not supported by sufficient evidence.

The City ordinance with reference to pedestrians crossing streets at places other than cross-walks is as follows: Art. IV, Section 1, paragraph (c). "Every pedestrian crossing a roadway at any point other than within a marked or unmarked cross walk shall yield the right of way to vehicles upon the roadway, provided that this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of pedestrians."

█ It will be seen from reading this provision that it does not make it unlawful for a pedestrian to cross a street at any place other than a marked or unmarked cross-walk, but only provides that such pedestrian shall yield the right-of-way to vehicles upon the roadway under such circumstances, and at the same time provides that the drivers of such vehicles must exercise due care for the safety of pedestrians. Under such provisions, it would ordinarily be a question of fact as to whether or not a pedestrian was guilty of negligence in failing to yield the right-of-way and whether or not such negligence was a proximate cause of any collision that might

occur under such circumstances. A different situation might be presented if it was unlawful for a pedestrian to cross a street at any place other than a marked or unmarked cross-walk.

█ Appellant next contends that the finding of the jury that Annie Enriquez did not fail to keep a proper lookout was not supported by the evidence and was contrary to all the evidence. Appellant's witnesses Lewis and Smith testified that Annie had some kind of covering over her head preventing her from seeing the taxicab. Annie testified that she had no such covering over her head, that she only had a small hat on top of her head. She further testified that when she arrived at the intersection of Leopard and Sam Rankin Streets she stopped and looked south along Sam Rankin Street, she then saw that she had a green light and proceeded across Sam Rankin Street to the point where she was struck. Under such facts whether she kept a proper lookout becomes a jury question. Furthermore, the taxicab either came through a red light and struck her, or changed its course of travel without warning and struck her. The law does not require that she should have anticipated that a taxicab would disobey a traffic light or change its course without warning and strike her. We overrule appellant's second point.

█ Appellant next contends that his witnesses Smith and Lewis having testified that the collision occurred in the middle of the block and Annie having not thereafter denied the fact, it became a judicial admission and therefore the court should have instructed a verdict in his favor. We overrule this contention. Annie had previously testified that she was crossing on the cross-walk at the intersection of Leopard and Sam Rankin Streets, and she was not required to retake the witness stand and reiterate this testimony in order to prevent the testimony of Smith and Lewis from becoming binding upon her as a judicial admission.

Appellant next complains of alleged improper argument made by appellees' counsel in his closing argument. We have concluded that upon this ground the judgment must be reversed. Special issue No. 31 dealt with the amount of recovery. In discussing this issue appellees' counsel in his argument had this to say: "Special Issue No. 31, asks you what she is entitled to for damages resulting from her injuries.

You have heard the testimony. I don't think any of you gentlemen would go through anything like that for any amount of money payment. She has suffered a large amount of damages. She has suffered a lot of pain, and she is going to suffer more in the future. She has told you that."

■ This was a direct appeal to the jurors to consider this case not as fair and impartial jurors but rather from the biased standpoint of a litigant, to consider this question as though they were the injured party. Such arguments have often been condemned and held to be reversible error, especially where an objection is made at the time and overruled by the trial court. Foster v. Langston, Tex.Civ.App., 170 S. W.2d 250, and authorities therein cited.

With reference to objecting to the argument of counsel the parties entered into the following agreement, to-wit: "It is stipulated and agreed that all infractions of rule No. 269, section (b) governing the arguments, that all objectionable argument made by counsel for either party may be considered as objected to and the exceptions overruled by the court without the necessity of counsel interposing specific objections as the argument is made."

This stipulation was made subject to the court's announcement as follows: "The court reserves the right to interrupt counsel."

Under this agreement and stipulation the trial judge approved defendant's Bill of Exception No. 1, containing the following objections to this argument and the court's ruling thereon as though the same had been made during the argument, to-wit: "With respect to Special Issue No. 31, submitting the amount of damages sustained by plaintiff, Annie Enriquez, plaintiffs' counsel said: 'I don't think any of you gentlemen would go through anything like that for any amount of money payment,' which was, in effect, a statement to the jury that they should view the evidence from the standpoint of plaintiff, Annie Enriquez, place themselves in her position, and fix the amount of damages by the amount for which they would be willing to undergo what said plaintiff had undergone, whereas it was the duty of the jury to view the evidence and arrive at their verdict from an impartial viewpoint, not that of either litigant, and to tell the jury that they should act from the partisan position of either litigant was highly improper and prejudicial, as fully appeared from the jury's flagrant disregard of the evidence in answering the issues submitted, and as appears from the gross excessiveness of the verdict."

This objection was by the court overruled.

■ Appellees contend that the stipulation was intended to cover only violations of Rule No. 269, subd. (b), Vernon's Texas Rules of Civil Procedure, but when the bill of exception approved by the trial judge is considered this contention cannot be sustained.

For the error pointed out the judgment will be reversed and the cause remanded.

NORVELL, Justice (concurring).

I concur in the opinion of Associate Justice MURRAY and the order of reversal entered thereon. It is regrettable that this cause must be reversed primarily because of the stipulation involved. Except for the trial court's approval thereof, the writer would be inclined to disregard the stipulation as being contrary to a public policy evidenced by regulatory measures and decisions affecting the trial of causes. The bill of exceptions recites events which did not in fact occur. Actually no objection was made to the improper argument complained of upon this appeal. Actually, the court did not overrule an objection thereto. Had an objection been made there is every reason to believe that the court would have admonished the jury not to consider it. This would have rendered the argument entirely harmless. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054. It is the exceptional case wherein the argument is of such an inflammatory nature that its harmful effect can not be removed by proper action of the trial court.

However, the lower court is vested with an extensive discretion relating to the conduct of a trial. The use of stipulations approved by the court generally facilitates the trial of causes and promotes the ends of justice. No doubt the stipulation here involved was approved with these ends in view. The greater good demands that the use of approved stipulations be recognized by this Court. We are therefore bound by the wording of the stipulation as it appears in the bill of exceptions. This is true although certain of the parties thereto at the time of the adoption of the stipulation may have had a conception of its construction

which differed from that indicated by its wording. The bill of exceptions discloses a reversible error and we are bound thereby.