**SOUTHERN PACIFIC COMPANY,**
Appellant,

v.

**Troy HAYES et al., Appellees.**

**No. 109.**

Court of Civil Appeals of Texas.

Corpus Christi.

May 20, 1965.

Rehearing Denied June 17, 1965.

Conde N. Anderson, of Houchins, Anderson, Smith & Null, Victoria, for appellant.

Willett Wilson, Houston, for appellees.

SHARPE, Justice.

This is an appeal from a judgment condemning a railroad right-of-way easement across three lots owned by appellees, fronting on Williams Street in the City of Port Lavaca, Texas. The awards to the property owners aggregated $6,880.00, allocated as follows: (1) To Troy Hayes, $1,640.00, of which $540.00 was for a right-of-way easement across a strip 20.33 feet by 54.2 feet located in the right-of-way for Williams Street, and $1100.00 for damages to the remainder of the lot, (2) to H. A. Lundin and wife, $2,300.00, of which $540.00 was for a similar easement to that of Hayes, and $1,760.00 for damages to the

remainder of the lct, and (3) to C. Sachtleben and wife, $2,900.00, of which $540.00 was for a similar easement to those just mentioned, and $2,360.00 for damages to the remainder of the lot. Originally, the suit was brought by appellees for injunction and damages against appellant on account of the building of an industrial spur track in the right-of-way of Williams Street at the front of appellees' lots. However, the case ultimately resolved into a condemnation proceeding as set out in a cross-action filed by appellant.

The judgment awards were based upon a jury verdict consisting of answers to twelve special issues. Four special issues were submitted as to each of the three lots here involved; two of such issues inquired about the value of the strip (each 20.33 by 54.2 feet) located in Williams Street before and after the taking of a right-of-way easement for railroad purposes; and the remaining two issues inquired concerning the value of the remainder of each lot before and after the taking of the easement over the said strip in the Street.

The properties involved are three adjoining lots, being the rear portions of lots numbers 2, 3 and 4, in Block 5, South Park addition to the City of Port Lavaca, Texas. Block 5, above mentioned, is bounded by La Salle Street on the South, Williams Street on the North, Austin Street on the East, and Leona Street on the West. Said Block 5 is widest next to Austin Street (211.5 feet) and is narrowest at Leona Street (96.8 feet). The properties here involved are the rear portions (approximately one-half) of lots 2, 3 and 4 facing on Williams Street. There are houses facing on La Salle Street on the front portions of each of said lots with driveways and garages. There is no alley between the houses facing on La Salle Street, and those facing Williams Street. Appellees' lots here involved do not have driveways or garages. A drainage ditch, known as the "Corporation Ditch" lies along the front portion of said lots next to Williams Street

and is approximately 12 feet in width. Said ditch, in effect, separates the rear portion of the lots upon which appellees' houses are located from Williams Street, and, since the construction of the railroad spur tract here in question, from the easement for Railroad purposes. The plat of said subdivision, made in 1948, shows that the front property line of appellees' lots to be at the South boundary of Williams Street, but it is conceded here that appellees own the fee title (subject to such street easement) to the center of Williams Street, a distance of approximately 27.5 feet from said property line. Appellees each have a small foot bridge built across the "Corporation Ditch" for the purpose of ingress and egress to their houses. When the railroad spur track was built in 1962, the paved portion of Williams Street was moved northward and said railroad tracks were located between the "Corporation Ditch" and the street. In addition to the two easements mentioned for the street and ditch, appellees' properties were also burdened with an additional easement of five feet in width for utilities. Photographs in evidence show that a series of poles run along the front portion of appellees' lots between the "Corporation Ditch" and Williams Street.

Appellant urges seventeen points of error. However, we have concluded that error is demonstrated by appellant's points 7, 8, 9, 10, 11, 12b, 14b and 16b and that the judgment must be reversed for the reasons hereinafter given. Points 12b, 14b, and 16b relate to the sufficiency of the evidence to support the answers of the jury to special issues 1, 2, 5, 6, 9 and 10, fixing the damages allegedly suffered by appellees in connection with the strips of land located in Williams Street; they are closely connected with points 3 and 5. Points 7, 8 and 9 relate to an instruction given by the trial court in connection with special issues 4, 8 and 12, concerning the value of the remainder of appellees' properties after the taking of the strips in Williams Street. Points 10 and 11 relate to improper jury arguments made by coun-

sel for appellees. Said points will be discussed in the order last mentioned.

Appellant's points 12b, 14b and 16b assert that the trial court erred in rendering judgment for appellees based upon the findings of the jury fixing the values of the strips in Williams Street, each 20.33 by 54.2 feet, before and after the taking of the railroad easement. The value of each strip before the taking was fixed at $595.00, and afterward at $55.00, or a net difference of $540.00; special issues 1 and 2 applied to appellees Hayes, 5 and 6 to appellees Lundin, 9 and 10 to appellees Sachtleben. We agree with appellant's contentions made under subdivision b. of points 12, 14 and 16, that the evidence is insufficient to support the findings of the jury in answer to the special issues just mentioned.

The only witness called by appellees who testified to dollars and cents values of the properties here involved was Mr. Tom Toney of Port Lavaca, Texas, a licensed real estate broker and building contractor. He said he was able to estimate values in said area and that he was familiar with appellees' properties. When Mr. Toney was first asked by counsel for appellees about the strip in Williams Street belonging to Hayes, the following occurred:

"Q. * * * could you give us your opinion of what the value of that 20.33 feet by 54.2 feet occupied by the railroad was before the spur track was placed in the street there?

Mr. ANDERSON: (counsel for appellant). Pardon me, Your Honor. We object. The question is not related to the proper measure of damages. We contend it is the market value in Calhoun County, Texas, and this witness has not been shown to be qualified as an expert as to measure of damages.

Q. I would ask you, do you know the value of that, Mr. Toney, before the placement of the railroad there from your experience as a real estate man?

A. That piece of land in front of the lot?

Q. Yes sir.

A. I would appraise that portion—

MR. ANDERSON: Your Honor, we renew our objection.

COURT: The objection will be overruled.

MR. ANDERSON: Note our exception.

A. Considering that section in front of the lot as a part of the lot 20 feet, approximately, as an extension of the lot, it would be the front portion of the lot, we appraise that on Mr. Hayes at $500.-00.

MR. ANDERSON. May I have a continuing bill?

COURT: Yes, sir."

The record discloses that throughout the examination of the witness Toney, counsel for appellant endeavored to determine what kind of "value" he was testifying about with reference to the small strips in Williams Street. On direct examination, said witness talked about "values" and "fair values". On cross-examination he was asked how he attributed any value to the said three strips of land which were already subject to public use as a street. He first said that such parcels had an intrinsic value, because they furnished access to the houses on the rear portions of the lots. Although the subject was mentioned by him, he never did testify that such strips had a market value, and finally testified that they had a value to the railroad; which appeared to be the real basis of his "value" opinion, aside from the access which such strips afforded to the street from the remainder of appellees' property. Mr. Toney was of the opinion that the

strips involved were worth twice as much per square foot as the remainder of appellees' properties.

A complete review of the record in this case reflects that the findings of the jury as to the difference in the reasonable market value of the three strips before and after the taking of a railroad right-of-way easement over them are not sufficiently supported by evidence. It is apparent that the strips over which easements were condemned by the railroad could have very little value to the owners either before or after such condemnation. The owners could make no practical use of them, except for ingress and egress to the remainder of the lots. The railroad did not (and could not under the law) condemn the fee simple title to said strips, and the owners' ingress and egress to their houses was affected only by having to cross the railroad tracks between the "Corporation Ditch" and the street.

■ Ordinarily, the value of an owner's fee simple title to a strip of land burdened by a street easement is of but nominal value. It has been held that where an easement requires practically the exclusive use of the surface and the owner is deprived of any beneficial use of the land, he is entitled to recover the market value of the fee from the condemnor. Thompson v. Janes, 151 Tex. 495, 251 S.W.2d 953 (1952). Conversely, in this case, where the fee title of the appellees to the strips in question was burdened with the easement for street purposes, and there existed two other easements along the front portions of said lots for the "Corporation Ditch" and utility poles and lines, it is readily apparent that there was little value in said strips and the taking of an additional easement for railroad right-of-way purposes would not affect to any great extent the reasonable market value of said strips. Appellant's points 12b, 14b and 16b, asserting that there is insufficient evidence to support the answers of the jury to special issues 1, 2, 5, 6, 9 and 10, fixing the

reasonable market values of the strips in question before and after the taking of the railroad easement, are sustained.

■ Appellant's points 7, 8 and 9 complain of the trial court's action in overruling appellant's objections to the instruction given in connection with special issues 4, 8 and 12, which inquired, separately as to the value of the remainder of each lot, after the taking of the easement over the front portion thereof, reading as follows:

> "You are instructed that in answering the preceding special issue, you may take into account the effect that the building, and the subsequent use of said spur track by the Southern Pacific Company, attendant with sounding of whistles, rattling of cars, jarring of the ground, dust and irritating smell of smoke and fuel from its switch engines, has on the adjacent property."

Appellant's objections to such instruction were, in substance that the same constituted a comment on the weight of the evidence; that the same assumed the truth of testimony given by appellee Sachtleben concerning the operation of appellant's trains; and that such instruction assumed that the building and use of appellant's spur track would have an adverse effect on adjacent property. Appellant's objections were well taken and should have been sustained. The instruction assumed the existence of facts not in evidence, since there was no testimony with reference to dust or irritating smell of smoke and fuel from appellant's switch engines. The instruction complained of was in part a summary of testimony which assumed the truth thereof and that the remainder of appellees' properties had been adversely affected by the taking of the easement over the front strip of the property in Williams Street. It would have been permissible to instruct the jury in connection with the value of the remainders of the tracts involved after the taking of the railroad ease-

ment, that it might take into consideration the uses to which the strip condemned may be subjected. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979 (1936). However, it is not proper for the trial court to assume the existence of facts not conclusively proved or by explanatory instruction or otherwise to summarize the testimony of witnesses and comment upon the weight or effect thereof. The harmful effect of such instruction, including the erroneous assumptions and comment is apparent. Fort Worth & D. Ry. Co. v. Barlow, 263 S.W.2d 278 (Tex.Civ.App.1953, wr. ref. n.r.e.); Hodges on Special Issue Submission in Texas, § 7, pages 19–24.

Appellant's points 10 and 11 complain of the action of the trial court in overruling appellees' objections to the argument of appellees' counsel in two different respects, as follows:

"Depending on your own judgment, you can see whether you would want to live next to the railroad where you had all the vibration and noise and smoke."

\*     \*     \*     \*     \*

"Gentlemen, I think the Railroad is trying to get to the property owners, if you want to know the truth about that. They have a big organization, a big corporation. That's what they represent themselves, and it is in evidence here, and they have got a lot of work to do on that track, and that's also in evidence, to haul all this rock, and they are not doing it to lose money on."

The ground of appellees' objection to the first-mentioned argument was, in substance, that it asked the jurors to put themselves in the place of appellees; and to the second argument that it was based upon the disparity in the economic advantages of the parties and invited the jurors to compare their financial positions.

■ The first argument was a direct appeal to the jurors to put themselves in the position of a litigant and to consider their own personal feelings in arriving at a verdict instead of basing it upon the legally admitted evidence and the instructions of the court. Such argument presents reversible error. Dallas Ry. & Terminal Co. et al. v. Smith et al., 42 S.W.2d 794 (Tex.Civ.App.1931, n. w. h.); Dallas Ry. & Terminal Co. v. Curtis, 53 S.W.2d 85 (Tex.Civ.App.1932, error refused); Southern Ice & Utilities Co. v. Richardson et al., 128 Tex. 82, 95 S.W.2d 956 (1936); Macfadden's Publications, Inc. v. Hardy, 95 S.W.2d 1023 (Tex.Civ.App., 1936, error refused); Gulf Casualty Co. v. Archer, 118 S.W.2d 976 (Tex.Civ.App.1938, error dismissed); Fambrough v. Wagley et al., 140 Tex. 577, 169 S.W.2d 478 (1943); Brooks v. Enriquez et al., 172 S.W.2d 794 (Tex.Civ.App.1943, error refused, w. o. m.); Western Union Telegraph Co. v. Sligar, 173 S.W.2d 220 (Tex.Civ.App.1943, n. w. h.); Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264 (1944); Kahn et al. v. Green, 234 S.W.2d 131 (Tex. Civ.App.1950, n. w. h.).

■ The second argument was an appeal to the jury to consider that appellant was a big corporation out to make money from the operation of the spur track over the condemned strips in question. This argument was also improper and constitutes reversible error. Brown Cracker & Candy Co. v. Castle, 26 S.W.2d 435 (Tex. Civ.App.1930, err. dis. w. o. j.); Southwestern Bell Telephone Co. v. Burris et al., 68 S.W.2d 542 (Tex.Civ.App.1934, n. w. h.); Western Cottonoil Co. v. Gillit, 270 S.W.2d 512 (Tex.Civ.App.1954, ref. n. r. e.).

We do not agree with appellees' contention that such arguments were, in any event, harmless. The findings of the jury herein resulted in substantial awards to appellees considering the location of the properties and quality of the houses in question. In two instances the findings of the jury resulted in awards which were higher than was supported by appellees'

testimony. The jury found the value of the strip in Williams Street belonging to appellees' Hayes to be $595.00, where the highest amount testified to was $500.00. The jury also found that the house and remainder of appellee Sachtleben's lot had a market value of $4,300.00 before the construction of the spur track and $1,-900.00 afterward. None of appellees' witnesses testified to a reduction of more than 50% in such value. Appellant's points 10 and 11 are sustained.

For the reasons given, the judgment of the trial court is reversed and the cause remanded for new trial.