**MAPCO, INC., Appellant,**

v.

**Myrle M. Holt FARRINGTON et al.,
Appellees.**

**No. 8193.**

Court of Civil Appeals of Texas,
Amarillo.

Nov. 15, 1971.

Rehearing Denied Dec. 13, 1971.

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Perryton, Marion Fallwell, Tulsa, Okl., for appellant.

Linn, Helms & Countiss, Richard N. Countiss, Spearman, for appellees.

REYNOLDS, Justice.

This is a condemnation proceeding. The judgment of the trial court is reversed and the cause is remanded.

The condemnor, Mid-America Pipeline Company, now MAPCO, Inc., the appellant before this court, initiated these proceedings to condemn a 50-foot wide easement across the northwest corner of a half section of land in Hutchinson County for an underground pipeline to transport anhydrous ammonia. After a hearing before special commissioners, appellant deposited in the registry of the county court double the amount awarded the condemnees by the special commissioners, and entered into possession of the condemned easement. Upon appeal of the special commissioners' award to the county court, the condemnees, appellees here, withdrew from the court's

registry the amount awarded by the special commissioners, leaving as triable issues only the market value of the easement taken and the damage, if any, to the remainder of the land. From a judgment entered on the jury's verdict, appellant has perfected its appeal, assigning 21 points of error, the last of which was abandoned on submission. The remaining 20 points relied on for reversal may be grouped broadly into three areas: improper statements and arguments points; no evidence and against the greater weight of the evidence points; and points concerning the admissibility of evidence.

In considering appellant's points alleging reversible error, and appellees' counter contentions, we have studied the complete record. The record reveals that the 50-foot wide easement extends a distance of 2,157 feet (130.73 rods) across the north-west corner of the north one-half of Section 84, Block S–T, T. & N.O. Survey in Hutchinson County. Thirty acres of the half section lie to the northwest of the easement. The half section is cultivated and irrigated, with the water flowing in a general east to west direction. Other than irrigation equipment, there are no improvements on the land, and the land is burdened by pipeline easements held by companies other than MAPCO, Inc.

The party who cultivated the land testified to farming problems, expenses and crop losses attributable to the pipeline. Only two witnesses—James H. Godfrey, presented by appellant, and J. L. Brock, presented by appellees—testified to the value of the land before and after the condemnation for the easement. Their testimony as to value, and the jury findings, were:

| 2.48 ac. Easement | Godfrey | Brock | Jury Finding |
|---|---|---|---|
| Before taking | $ 812.00 | $ 875.00 | $ 875.00 |
| After taking | 406.00 | 125.00 | 125.00 |
| *Easement value* | $ 406.00 | $ 750.00 | $ 750.00 |
| 317.52 ac. Remainder | | | |
| Before easement | $103,188.00 | $111,125.00 | $111,125.00 |
| After easement | 101,888.00 | 95,250.00 | 89,850.00 |
| Damages | $ 1,300.00 | $ 15,875.00 | $ 21,275.00 |
| Total | $ 1,706.00 | $ 16,625.00 | $ 22,025.00 |

Judgment was entered on the jury verdict for $22,025.00, which is $5,400.00 more than the damages testified to by any witness.

After examining the entire record, we conclude that the judgment of the trial court must be reversed and the cause remanded. This conclusion is reached because the statements and arguments of counsel for appellees allowed over timely objections, when considered in light of the whole record, were improper, prejudicial and reasonably calculated to, and probably did, incongruously influence the jury to the extent that they returned a verdict of damages materially in excess of support in the record, and one that they would not have rendered except for such improper statements and arguments. In reaching our decision, we were and are cognizant, accordant to the views of all counsel, that in a condemnation proceeding the jury is not bound by expert opinion as to market value, and improper argument within itself is not reversible error; a reversal is required only when the improper statements and argument, considered in the light of the whole record, is reasonably calculated to cause such prejudice to the opposing litigant that the withdrawal of such or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict and

judgment. Texas Employers Ins. Assn. v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954). We will not unduly lengthen this opinion by setting out all of the statements and arguments that prompted our conclusion, but only a portion effectual to produce the conclusion we have reached, with reference to other statements and arguments.

■ Through a motion in limine filed and presented to the trial judge prior to trial, appellant sought to exclude, among other matters, any reference that the jurors should put themselves in the position of a condemnee and consider their own personal feelings, if and when their property is condemned. The motion was denied. In appellees' final argument, the jury was told:

"Now, all Mr. Holt has to do if he wants to prepare a case like they prepared—now, he's out there trying to farm his land, he and Mike, and all they've got to do is go hire an airplane and a photographer to take pictures, they've got to hire them a team of good lawyers, they've got to get them a $150.00 a day expert and have him go to all of the ASC offices. Just put yourself in this position. Put any citizen in this position. This could happen to your house. The only reason why they didn't condemn your home was because it wasn't in their way."

Appellant objected to this argument, and, the objection being overruled, the argument continued:

"That's right, and pipeline companies have the right. The only reason they didn't go through your home is because it wasn't there. * * *"

At this point appellant requested a continuing objection to "this prejudicial and improper argument," which request was granted by the court. Shortly thereafter, appellees' counsel argued:

"* * * And if it was your house, you would be in the same position (as appellees). * * *

"* * * I'll tell you what they do, they run over people just like they are trying to run over this man. He's not the only one that's having this trouble."

Appellant's objection to the latter portion of this argument was overruled. Following the court's ruling, appellees' counsel argued to the jury:

"* * * They can stand up here and tell you that we should have done this and that, and they've got their experts that say this and that, but they're wrong and they've got to pay. And if you don't make them pay, you have hurt yourself, and you've hurt me, and, really, you've hurt them, because you know what they will do? They'll just get worse, if they get away with it. Most people won't go out and hire lawyers. These people never have been in a court house trying a lawsuit, in all of the years that they have farmed out there. So, most people won't go to court to protect their rights, and companies like MAPCO, if there is any more like them, just keep going on and on, and it's bad for you and it's bad for me, because the next time it might be your house, or your farm. Put yourself in that position."

No objection was interposed at this point in the argument. Later in the same final argument, it was stated:

"* * * We've been talking about the market value of land, transfer it to a house, your house. What would you take for one room of your house?"

Appellant's objection to this argument was overruled, and appellees' counsel then stated:

"What would you take for the living room in your house? Or what would your wife take for the sewing room back in the back of the house? Just sell

one room off your house. What they want is two or three acres, and they say it wouldn't hurt the rest of this land, well, would it? Suppose you decide you want to sell your house and the real estate man brings someone around to look at your house. And it's a beautiful home, but you have to say, 'There's one thing I forgot to tell you. There's one room over here that some people condemned, and they've got a right to use it. Now, you've got a right to use it when they're not here, but they're kind of messy when they come in. But that's all right, if they damage anything you can go to court and sue them.' What would you take for a room in your house? You don't want to sell a room out of your house, and anybody who owns land doesn't want to sell an acre or two right out of the center of it. I can tell you one thing, you would be right here in court like the Holts are if they tried to take a room of your house, * * *."

Appellant's motion in limine anticipating such statements and arguments, and appellant's objections to the arguments made, should have been sustained, and the argument, which urged the jurors to place themselves in the position of the condemnees, should not have been permitted. In Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943), this type of argument was held to be reversibly erroneous and incurable even had the trial court sustained the objections and properly instructed the jury not to consider it. This is for the reason that the argument appealed to the jury to consider the case from the improper viewpoint of placing themselves in the condemnees' position. In *Fambrough*, as here, when the improper argument was overruled in the jury's presence, the jury easily could have drawn the conclusion that such was the proper viewpoint from which they could and should assess damages, rather than from evidence as to the market value of the land affected. Here the result is made manifest in the verdict for $5,400.00 more than was testified to by any witness.

■ In addition to the above arguments, appellees' counsel was permitted, after appellant's motion in limine to exclude was overruled and over objections, to state and to argue that appellees did not want to sell their property. While these statements and arguments standing alone might not constitute reversible error since in a condemnation proceeding it may be inferred that the condemnee does not wish to sell; but it may as well be inferred that the condemnee is willing to sell, but he or the condemnor merely desires to litigate the amount of damages which properly should be paid. In any event, when the condemnees withdrew the deposit corresponding to the award of the special commissioners, they assented to the taking and thereafter will not be heard to claim that the condemnor had no right to take the property. State v. Jackson, 388 S.W.2d 924 (Tex.Sup.1965). Whether the condemnees were willing to sell was entirely immaterial to this proceeding; the only issue before the jury was the amount of compensation. The motion in limine and the objections should have been sustained. Although the overruling of the motion in limine in itself is not reversible error, when the matters properly attempted to be excluded are in fact prejudicially injected over timely objection reversal is warranted. Hartford Accident & Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.Sup.1963). Permitting these statements and arguments to be made to the jury compounded the error of the arguments previously held to be improper and the probability of an improper verdict. Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956).

■ In view of our remand, it is appropriate that we mention other matters concerned in this appeal. Bearing in mind that the only litigious issue is compensation for the land involved, matters pertaining to appellant's profits or the differ-

ence between the economic positions of the parties are not pertinent, but prejudicial, and should be excluded. Southern Pacific Co. v. Hayes, 391 S.W.2d 463 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n. r. e.). The same rationale is applicable to any statements, arguments or testimony concerning expenses and fees relating to an appeal, the condemnees' experience with other pipeline companies securing easements across the land, or matters such as condemnor's intention to waterpack the pipeline ditch that are not material to the ultimate issues.

 Having held that improper argument resulted in an improper verdict for an amount of damages exceeding that testified to by any witness, it is not necessary that we further discuss in detail the other assignments. In this connection, however, appellant's contention that J. L. Brock's valuation testimony should be stricken is not well taken. His qualification is a matter entrusted to the discretion of the trial court, City of Teague v. Stiles, 263 S.W.2d 623 (Tex.Civ.App.— Waco 1953, writ ref'd n. r. e.), and his qualification met the legal test set out in Rayburn, Texas Law of Condemnation, § 126. Appellant's complaint is more properly directed to the weight, rather than the admissibility of Brock's testimony. Neither do we perceive error in the trial court's refusal to permit appellant's witness to testify to the comparison of sales of land in Hale County, a distance of some 150 miles from the land involved in this proceeding. This, too, involving the test of similarity, is a matter within the discretion of the trial court and, under the testimony in the record, no abuse of discretion is shown. Morgan v. State, 343 S.W.2d 738 (Tex.Civ.App.—El Paso 1961, writ ref'd n. r. e.); State v. Childress, 331 S.W.2d 230 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.). Moreover, evidence of specific items of damage resulting from construction of the pipeline is admissible, not as the measure of damages, but as elements to enable the jury to ar-

rive at the correct market value, so long as such items are related to and tend to affect the market value of the land. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936).

Reversed and remanded.